```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
MURRAY ENGINEERING, P.C.,                                   :
                              Plaintiff,                    :
                                                            :           12 Civ. 0052 (JPO)
              -v-                                           :
                                                            :           MEMORANDUM AND
WINDERMERE PROPERTIES LLC, also known                       :                ORDER
as WINDERMERE HOLDINGS, LLC;                                :
DUBINKSY CONSULTING ENGINEER, P.C.,                         :
also known as DUBINSKY CONSULTING                           :
ENGINEERS and GACE CONSULTING                               :
ENGINEERINGS P.C.,                                          :
                                                            :
                              Defendants.                   :
                                                            :
-------------------------------------------------------- X
```

J. PAUL OETKEN, District Judge:

Murray Engineering, P.C. ("Murray") brought this action for copyright infringement against Windermere Properties LLC ("WP"), Dubinsky Consulting Engineers, P.C. ("Dubinsky"), and Gace Consulting Engineers P.C. ("Gace"). WP defaulted, and has now moved to vacate the default judgment on the ground that the Court lacks subject matter jurisdiction over this action, or in the alternative, for good cause. For the reasons that follow, WP's motion to vacate the default judgment is granted, but its motion to dismiss the case for lack of subject matter jurisdiction is denied. WP shall bear the costs stemming from its default, as explained in more detail below.

**I.     Background**

    **A.     Allegations in the Underlying Complaint**

Murray is a professional corporation specializing in design, restoration, preservation, and adaptive reuse of architecture in New York City. WP is a limited liability company that owns an apartment building at 400-406 West 57th Street, New York, New York ("the Property"). On or

1

before April 2, 2009, Murray agreed to design and supervise the restoration of the Property. The work included the preparation of architectural plans, elevations, and technical drawings (collectively, "the Elevations") that were to serve as the blueprint for the restoration work. Murray applied for copyright registration in the Elevations, and on February 16, 2011 he was issued a Certificate of Registration. (Dkt. No. 1, Ex. A.)

On January 7, 2010, Murray provided WP with a full set of the Elevations, with explicit notice that they were the property of Murray. Shortly thereafter, WP breached its contract with Murray by failing to make required payments. Allegedly, WP then distributed copies of the Elevations to Gace and Dubinsky, and at some point in 2011, Gace completed work on the Property using the Elevations.

### B.     The Lawsuit and WP's Default

Murray filed this action on January 4, 2012. (Dkt. No. 1 ("Compl.").) The Complaint alleges infringement of an architectural work and infringement of technical drawings and photographs. It seeks a permanent injunction and damages resulting from infringement, or else statutory damages pursuant to the Copyright Act.

WP was served on January 11, 2012, and WP's Answer was due by February 1, 2012. (Dkt. No. 4.) WP failed to file a timely Answer, and on February 27, 2012, the Clerk of the Court issued a Certificate of Default as to WP. (Dkt. No.10.) On March, 28, 2012, Murray moved for a default judgment against WP. (Dkt. No. 17.) On April 20, 2012, attorney Donald A. Derfner wrote a letter to the Court, stating that WP

> contacted me to discuss the possibility of retaining [my law firm] to represent WP in the referenced action. I learned that plaintiff has filed a Notice of Motion for Entry of a Default Judgment against WP (and co-defendant Dubinsky Consulting Engineers), pursuant to which WP's appearance is due today. Mr. Tress advised that WP has meritorious defenses, and has not appeared in this action due to the illness of the attorney WP previously engaged, who is

>recovering from surgery. . . .  Under these circumstances, we respectfully ask the Court to extend the time for WP to appear and answer until the initial case management conference, now scheduled for April 26, 2012.

(Dkt. No. 21.)  Despite the fact that Murray did not consent to this extension, the Court granted it. (*Id.*)  Not having heard from WP, the Court granted a default judgment and permanent injunction against WP and in favor of Murray on April 26, 2012.  (Dkt. No. 23.)  The Court then referred the matter to Magistrate Judge Francis for a hearing on damages.  (Dkt. No. 24.)  Murray served its Proposed Findings of Fact and Conclusions of Law on August 30, 2012, after which Judge Francis ordered that an inquest on damages be held on October 5, 2012.  (Dkt. Nos. 29-30.)  On September 29, 2012, attorney Charles Wertman filed a Notice of Appearance on behalf of WP; on October 2, 2012, attorney David Paul Gillet also appeared.  (Dkt. Nos. 53-54.)[1]

### C. WP Moves to Vacate

On October 19, 2012, WP moved to vacate the default judgment.  (Dkt. No. 56 ("WP Mem.").)  Murray opposed the motion on November 9, 2012.  (Dkt. No. 63 ("Murray Opp'n.").)  WP replied on November 26, 2012.  (Dkt. No. 68 ("WP Rep.").)

## II. Discussion

In support of its motion to vacate the default judgment, WP makes two arguments: first, that the Court lacks subject matter jurisdiction over the case, and second, that WP's default should be excused for good cause.  These arguments are addressed in turn.

### A. Subject Matter Jurisdiction

"The district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v.*

---

[1] On October 15, 2012, there was a conference before Judge Francis, at which WP informed the Court that intended to move to vacate the default judgment.  Judge Francis therefore postponed the inquest.

*Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)).  Subject matter jurisdiction may therefore be considered at any stage of a litigation, even after a defendant has been determined to be in default.  *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 107-108 (2d Cir. 1997); *see also United States v. Forma,* 42 F.3d 759, 762 (2d Cir. 1994) (recognizing that a default judgment entered in the absence of subject matter jurisdiction is void and must be vacated).

28 U.S.C. § 1338(a) provides that federal district courts have original and exclusive "jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."  In cases, such as this, where a copyright action is intertwined with a contract dispute, "[t]he question of whether the [action] gives rise to a federal cause of action under the Copyright Act is a complex issue in a 'murky' area."  *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 931 (2d Cir. 1992) (citation omitted).  In *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir. 2000), however, the Second Circuit greatly simplified the matter of subject matter jurisdiction in copyright cases, by reaffirming the test articulated by articulated by Judge Friendly in *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964).  *Id*. at 355.  Under the *T.B. Harms* test, **"**a suit 'arises under' the Copyright Act jurisdiction if (1) '[t]he complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement . . . ;' or (2) '[t]he complaint . . . asserts a claim requiring construction of the Act . . . .'" *Id.* at 349 (quoting *T.B. Harms Co.,* 339 F.2d at 828).  The *Basset* Court was clear as to the meaning of the test: "If the complaint alleges copyright infringement or seeks an injunction [or some other remedy] under the Copyright Act, under *T.B. Harms* the federal court has jurisdiction.**"**  *Id.* at 355.  Thus, district courts should not attempt to "look

4

beyond the complaint" to determine whether the plaintiff is "really concerned" about copyright infringement. *Id.* at 350 n.4, 352.[2]

WP argues that it is apparent from the Complaint and the underlying contracts that "[Murray] has a garden variety contract claim, not a copyright infringement claim," and that the case therefore does not arise under § 1338(a). (WP Mem. at 8.) Applying *Bassett*, however, it is plain that Murray's claim does arise under § 1338(a). Murray alleges *both* that his copyrights were infringed upon (*see* Compl. at ¶¶ 24-28, 33-36) and that he is entitled to an injunction as well and damages under the Copyright Act. (*Id*. at ¶¶ 29-30, 37-38.) The Complaint thus states claims arising under the Copyright Act. *Accord Twisted Records v. Rauhofer*, No. 03 Civ. 2644 (DF), 2005 WL 517328, at *4 (S.D.N.Y. Mar. 3, 2005) (subject matter jurisdiction was proper where plaintiff claimed copyright infringement and sought relief under the Copyright Act); *Marvullo v. Gruner & Jahr,* 105 F. Supp. 2d 225, 233 (S.D.N.Y. 2000) (same).[3]

### B. Good Cause to Vacate Default Judgment

WP next argues that the default judgment should be set aside for good cause.

#### 1. Standard of Review

Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Rule 55(c) does not define "good cause," but the Second Circuit has instructed district courts "to consider three criteria in deciding a Rule

---

[2] In reaffirming *T.B. Harms*, the *Bassett* court rejected dicta in *Schoenberg*, *supra*, which called for an examination by district courts of "whether the plaintiff's infringement claim is only 'incidental' to the plaintiff's claim seeking a determination of ownership or contractual rights under the copyright . . . ." *Id*. 352 (quoting *Schoenberg*, 971 F.2d at 932). The *Bassett* Court found this test "unworkable," in part because "it overlooks that, because the Copyright Act gives federal courts *exclusive* jurisdiction to enforce its provisions, a plaintiff who is denied access to a federal forum on the theory that his copyright claims are incidental to a contract dispute is thereby absolutely denied the benefit of copyright remedies." *Id*. at 352.

[3] Most, if not all, of WP's arguments go to the merits of Murray's claim, and thus are simply not relevant to the question whether the Court has subject matter jurisdiction over this matter.

55(c) motion: (1) whether the default was willful; (2) whether setting aside the default would prejudice the party for whom default was awarded; and (3) whether the moving party has presented a meritorious defense." *Peterson v. Syracuse Police Dep't.*, 467 Fed. Appx. 31, 33 (2d Cir. 2012) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)).  These same three criteria are applied to motions brought pursuant to Rule 60, although they are applied more rigorously in the context of a Rule 60 motion.  *Id*.

In this circuit, there is a strong "preference for resolving disputes on the merits." *Enron Oil Corp.,* 10 F.3d at 95 (citation omitted).  Moreover, "because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id*. at 96.  In cases where "substantial rights are implicated" or "when substantial sums of money are demanded," default judgments "are particularly disfavored by the law." *Id.* at 97 (internal citations omitted).

### 2. The Applicable Standard

At the outset, the Court must determine whether Rule 55(c) or Rule 60(b) applies here. WP moved to vacate under Rule 55(c), but Murray argues that, because the Court has entered a default judgment as to WP's liability and has ordered an injunction, Rule 60(b) should apply.

Rule 60(b) governs motions to set aside "final judgments."  A judgment is "final," however, only "when there is nothing left for the Court to adjudicate." *Globe Indem. Co. v. J.T. Falk & Co., Inc.*, No. 91 Civ. 0271 (PKL), 1992 WL 116630, at *3 (S.D.N.Y. May 15, 1992) (citing *Ginett v. Computer Task Grp., Inc.,* 962 F.2d 1085 (2d Cir. 1992)).  "Therefore, it is the 'good cause' standard of Rule 55(c), as opposed to the more rigorous standards of Rule 60(b), that applies" to a case such of this, where an inquest on damages has been ordered but has not yet taken place.  *Id*.; *accord Roberts v. Keith*, No. 04 Civ. 10079 (CSH), 2007 WL 2712853, at *2 (S.D.N.Y. Sept. 18, 2007) ("In this case, plaintiff obtained a default judgment against Keith.

6

Ordinarily Rule 60(b) governs a motion to vacate a default judgment (as opposed to the entry of default). However, when a case is referred for an inquest as to damages, the more lenient 'good cause' standard of Rule 55 applies . . . ."); *SoloSpar, Inc. v. Equinox Fitness Ctr.*, No. 96 Civ. 9449 (KMW), 1998 WL 386179, at *1 n.1 (S.D.N.Y. July 7, 1998) ("In light of the adjournment of the inquest, no final judgment has been entered in this case. Accordingly, the Court considers whether, under Rule 55(c), the entry of default should be set aside.").

Accordingly, WP correctly made its motion pursuant to the more lenient Rule 55(c).

### 3. The Good Cause Factors

As explained above, courts look to three factors to determine whether good cause exists to vacate a default under Rule 55(c): (1) whether the default was willful; (2) whether setting aside the default would prejudice the plaintiff; and (3) whether defendant has presented a meritorious defense. A finding that one factor militates against good cause is not dispositive. *Accord I.L.G.W.U. Nat. Ret. Fund v. Meredith Grey, Inc.*, 986 F. Supp. 816, 823 (S.D.N.Y. 1997) (noting that the factor of willfulness "is relevant but not dispositive"). Indeed, because a large sum of money is at stake, good cause will be found unless these factors weight clearly in Murray's favor.[4] *See Enron Oil Corp., supra.*

#### a. Willfulness

The Second Circuit has "interpreted 'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or careless." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (citations omitted). However, "the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *Id.* (citations omitted). In order to establish a finding of willfulness, there is no requirement that

---

[4] Murray is seeking a judgment of $67,500 in actual damages and $1.18 million in infringer's profits. (Dkt. No. 36, at 6.)

the party acted in bad faith, but rather "it is sufficient that the defendant defaulted deliberately." *Gucci Am., Inc. v. Gold Ctr. Jewelry,* 158 F.3d 631, 635 (2d Cir. 1998).

In support of their motion to vacate, WP has submitted declarations from Mark Tress, the managing member of WP, and Charles Wertman, WP's attorney in this action. (Dkt. Nos. 57 ("Tress Decl.") and 58 ("Wertman Decl."). Mr. Tress admits to having received the Summons and Complaint in this action, but states that he believed they were in connection with another lawsuit between Murray and WP in state court. (Tress Decl. at ¶ 6.) Because WP had retained counsel in the state court action, Mr. Tress believed, incorrectly, that the papers were duplicates of papers also received by WP's attorneys. (*Id*. at ¶ 7.)

Mr. Tress realized that there was a separate action in federal court in April 2012, when he received the Notice of Motion for Default. (*Id*. at ¶ 8.) At this point, he met with several attorneys, and decided to engage Mr. Wertman. (*Id.*) For his part, Mr. Wertman explains that, at the time he agreed to represent WP in this action, "I had to turn my attention to a dire family crisis. . . . [My son] Eli was suffering severe seizures, and my wife and I had to devote days and nights at the home attending to Eli. Candidly, I had forgotten about this lawsuit, and gave it no further thought until Mr. Tress advised [me that] he had received the Notice of Inquest." (Wertman Decl. at ¶ 4.) Mr. Tress similarly appears to have given the lawsuit no thought between the time he engaged Mr. Wertman and the time he received the Notice of Inquest.

The Court accepts Mr. Tress's explanation concerning his initial confusion as to the nature of the federal action. Less easy to accept is Mr. Wertman's permitting months to go by without moving to set aside the default judgment. Even taking into consideration the personal difficulties faced by Mr. Wertman, his behavior was highly negligent. Nor does the fact that Mr. Wertman is primarily at fault shield WP from blame. *Accord McNulty*, 137 F.3d at 740 ("[W]here the attorney's conduct has been found to be willful, the willfulness will be imputed to

the party himself where he makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit.")

WP's conduct, while undoubtedly negligent, likely does not rise to the level of willfulness. Both declarants state that WP's failure to answer was not a deliberate strategic decision (Tress Decl. at ¶ 11; Wertman Decl. at ¶ 5), and, resolving all doubts in favor of the moving part, the Court will assume that this is the case. Even if WP's conduct were willful, for the reasons explained below, there would be sufficient reason to find good cause in this case. *Accord Int'l Cargo & Sur. Ins. Co. v. Mora Textiles Corp.*, No. 90 Civ. 3880 (KMW), 1991 WL 120359, at *3 (S.D.N.Y. June 21, 1991) ("[E]ven if [the] default were willful, the other two factors in the three-factor test support a decision to vacate the default judgment here.")

### b.     Prejudice to Plaintiff

Prejudice to the nondefaulting party is "the single most persuasive reason for denying a Rule 55(c) motion . . . ." 10A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2699 (3d ed. 2010). In order to show the requisite level prejudice, the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated. *See id.* ("Indeed, in most instances, the finding of no substantial prejudice reflects the ability of the court to impose terms and conditions on the granting of relief in order to compensate or otherwise protect the party not in default.") Moreover, it is well established that "delay alone is not a sufficient basis for establishing prejudice. Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (internal citations and quotation marks omitted).

Murray argues that it "will suffer prejudice if the default judgment is vacated because it has already spent significant resources on discovery and pre-trial work." (Murray Opp'n. at 18.) It is evident from the record that, in order to prepare its Proposed Findings of Fact and Conclusions of Law, Murray retained an appraiser, David Shlosh, and an expert on damages, Professor Michael A. Einhorn, both of whom submitted reports in anticipation of the inquest on damages before Judge Francis. (*See* Dkt. Nos. 46, 48.) However, such expenses, though by no means trivial, can be cured by the imposition of a condition that WP bear the costs of the preparation of the Proposed Findings of Fact and Conclusions of Law. *Accord RLS Assocs., LLC. v. United Bank of Kuwait PLC.*, No. 01 Civ. 1290 (CSH), 2002 WL 122927, at *8 (S.D.N.Y. Jan. 29, 2002) (holding that, while the prejudice the plaintiff sustained by "complet[ing] the task of producing its Proposed Findings of Fact and Conclusions of Law" is "insufficient to deny [the defendant] relief from the default in this case," it is appropriate to permit the plaintiff the recover all reasonable costs "incurred as a result of the default").[5]

### c.     Meritorious Defense

"A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp.,* 10 F.3d at 98 (internal citations omitted). Having reviewed the briefs and accompanying materials submitted by WP, the Court has determined that WP may have a meritorious defense in this action.

---

[5] Murray also claims it will be prejudiced because the injunction against WP will be lifted. (Murray Opp'n at 19.) This argument is tautological: Murray is in essence arguing that the vacating of the default judgment will prejudice Murray because the judgment would be vacated. This is simply the denial of the benefit to the non-defaulting party obtained as a result of the default, but that by itself is not the sort of "prejudice" that is cognizable under the Rule.

Having considered the relevant factors, the Court concludes that WP has sufficiently demonstrated "good cause" to set aside the entry of default pursuant to Rule 55(c).

### III. Conclusion

For the foregoing reasons, Defendant Windermere Properties' motion to vacate default is GRANTED, but its motion to dismiss based on subject matter jurisdiction is DENIED. Windermere Properties shall bear the attorney's fees and costs incurred by Plaintiff Murray Engineering as a result of the default. Murray may quantify the fees and costs by affidavit of counsel detailing the relevant attorney time spent, an itemized statement of out-of-pocket costs, and contemporaneous time sheets supporting the time claimed.

The Clerk of the Court is directed to close the Motions at Docket Numbers 56 and 62.

SO ORDERED.

Dated: New York, New York
April 30, 2013

_____
J. PAUL OETKEN
United States District Judge